UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

NORTH STAR BLUESCOPE STEEL LLC,

    Plaintiff,

v.                                                        Case No. 05-CV-71260-DT

BETA METALS, INC. AND CIGMA METALS
CORPORATION,

    Defendants.
                                                 /

**OPINION AND ORDER GRANTING PLAINTIFF'S "MOTION TO ENFORCE SETTLEMENT AGREEMENT"**

Pending before the court is Plaintiff North Star Bluescope Steel LLC's "Motion to Enforce Settlement Agreement," filed on July 28, 2005. No response has been filed by Beta Metals, Inc. and Cigma Metals Corporation.[1] Having reviewed Plaintiff's motion and supporting brief, the court concludes a hearing on the motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

## I.  BACKGROUND[2]

After various settlement discussions, Defendants communicated a final settlement offer, through Bill Schneider,[3] to Plaintiff on June 8, 2005 via Plaintiff's

---

[1] The court is also informed through its staff, that Defendants do not intend to file a response brief.

[2] Inasmuch as Defendants did not submit a response brief, the court accepts the facts set forth in Plaintiff's "Memorandum in Support of Plaintiff's Motion to Enforce Settlement Agreement" as undisputed.

[3] According to Plaintiff, Defendants' counsel explained that Defendants had incurred financial difficulties and had retained Mr. Schneider as a "workout specialist." After inquiring as to Mr. Schneider's authority to bind Defendants to a settlement agreement, Defendants counsel sent Plaintiff an email which stated: "At my client's

counsel's voicemail.  (*See* Pl.'s Mot. Br. at 2.)  After Plaintiff's counsel sought assurance that Mr. Schneider could bind Defendants, Plaintiff's counsel discussed the conditions of the settlement with Mr. Schneider and agreed that Defendants would pay Plaintiff a total of $150,000 under the following terms:

(1) A $20,000 "down payment" payable prior to the case management conference scheduled for July 7, 2005;

(2) Twenty consecutive payments of $6,500 each payable on the 8th of each month thereafter commencing on August 8, 2005;

(3) Dismissal of the litigation without prejudice;

(4) Execution of a dismissal with prejudice to be filed by North Star's counsel upon receipt of final payment;

(5) Execution of a stipulated order setting aside the prior dismissal without prejudice and for entry of consent judgment in the amount of $500,000 less any payments received by North Star.  This stipulated order and consent judgment would be filed only if Defendants failed to make any payment due under the settlement agreement;

(6) Each Defendant would grant to North Star a security interest in all of Defendants' respective assets.

(*Id.* at 2-3.)  Plaintiff drafted settlement documents reflecting this agreement and emailed them to Defendants' counsel on June 27, 2005, and to Mr. Schneider on June 28, 2005.  (*Id.* at 3.)  Mr. Schneider responded with a few minor edits, but specifically noted that the document seemed "effective, accurate and attractive."  (*Id.* at 4.; 6/28/05 Email, Pl.'s Ex. A.)   Plaintiff's counsel responded by asking if "everything else look[ed] okay?"  (*Id.*)  Mr. Schneider answered:

---

direction, my client has asked me to ask you to call Bill Schneider."  (Pl.'s Mot. Br. at 2.)  Under these facts there can be no dispute that Mr. Schneider had, at a minimum, apparent authority to act on behalf of Defendants.

2

> Yeah-it's actually a pretty agreement if you know what I mean. It appears to cover everything well and reads in a smooth flowing fashion. You come to appreciate good form in agreements when you're involved with such so often. I'll read it carefully and get back to you with comments.

(*Id.*) No further edits were suggested by Mr. Schneider or Defendant's counsel.

Thereafter, Defendants indicated through Mr. Schneider that they were having difficulty obtaining the required $20,000 down payment. (*Id.*) Thus, Plaintiff's counsel requested that the July 7, 2005 status conference go forward. At the conference, *both* parties specifically informed the court that a verbal settlement had been reached, but had not been reduced to writing. (*See* 7/08/05 Order.) Thus, the court conducted a second status conference on July 13, 2005, at which the parties indicated to the court that a disagreement had arisen as to whether they had reached a settlement agreement to resolve the claims in this civil action. After the conference, the court established a briefing schedule for any motion to enforce the settlement. (*See* July 20, 2005 Order.) Consistent with these deadlines, Plaintiff brought the current motion on July 28, 2005. No response was filed by Defendants.

## II.  STANDARD

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir. 1976); *see also Bamerilease Capital Corp. v. Nearburg,* 958 F.2d 150, 152 (6th Cir. 1992). "The district court's power to summarily enforce settlements extends to cases where the parties' agreements are not in writing and even to those settlement agreements made off the record, not in the presence of the court." *Henley v. Cuyahoga County Bd. of Mental Retardation and Developmental Disabilities*, No. 04-3406, 2005 WL 1579781, *3 (6th Cir. 2005) (citing *Bowater N. Am.*

3

*Corp. v. Murray Mach., Inc.,* 773 F.2d 71, 76-77 (6th Cir.1985); *Kukla v. Nat'l Distillers Prods., Co.,* 483 F.2d 619, 621 (6th Cir.1973)). "[W]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Bamerilease Capital Corp.,* 958 F.2d at 152 (quoting *White Farm Equip. Co. v. Kupcho,* 792 F.2d 526, 529 (5th Cir. 1986)). Thus, the court will apply Michigan contract law to determine whether a valid settlement agreement was reached. *See Walbridge Aldinger Co v. Walcon Corp.*, 525 N.W.2d 489, 491 (Mich. Ct. App. 1995) ("An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts.").

Under Michigan law, in order to form a valid contract, there must be a meeting of the minds, or mutual assent, with respect to all material terms of the contract. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). Further, "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* In making the determination of whether a meeting of the minds occurred, "[t]he court considers the relevant circumstances surrounding the transaction, including all writings oral statements, and other conduct by which the parties manifested their intent." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 794 (Mich. Ct. App. 1994).

### III.  DISCUSSION

Looking at the facts objectively, there can be no doubt that a meeting of the minds occurred with respect to all material terms of the settlement agreement. According to the uncontroverted facts before the court, Mr. Schneider proposed

4

Defendants' "final offer" of $150,000 on June 8, 2005. After verifying Mr. Schneider's authority to negotiate a settlement on behalf of Defendants, Plaintiff's counsel accepted this offer on June 8, 2005, and negotiated the remaining terms of the settlement with Mr. Schneider. This verbal contract is also reflected in the subsequent emails and communications between Plaintiff's counsel, Defendants' counsel, and Mr. Schneider. Moreover, the court notes that counsel for both parties explicitly acknowledged the existence of a settlement at the July 7, 2005 status conference. Thus, after considering all relevant circumstances surrounding the transaction, *see Barber*, 509 N.W.2d at 794, the court concludes a meeting of the minds occurred with respect to the following terms:

(1) A $20,000 "down payment" payable prior to the case management conference scheduled for July 7, 2005;

(2) Twenty consecutive payments of $6,500 each payable on the 8th of each month thereafter commencing on August 8, 2005;

(3) Dismissal of the litigation without prejudice;

(4) Execution of a dismissal with prejudice to be filed by North Star's counsel upon receipt of final payment;

(5) Execution of a stipulated order setting aside the prior dismissal without prejudice and for entry of consent judgment in the amount of $500,000 less any payments received by North Star. This stipulated order and consent judgment would be filed only if Defendants failed to make any payment due under the settlement agreement;

(6) Each Defendant would grant to North Star a security interest in all of Defendants' respective assets.

Inasmuch as there is no dispute as to the terms and conditions of the settlement agreement,[4] the court will grant Plaintiff's motion, and enforce the terms of the parties'

---

[4] As noted above, Defendants have not presented any opposition to Plaintiff's motion, and all of Plaintiff's proffered facts, which are indeed well documented, are accepted as true.

5

settlement agreement.  See *Henley*, 2005 WL 1579781, *3 (quoting *Re/Max Int'l, Inc. v. Realty One, Inc.,* 271 F.3d 633, 641 (6th Cir.2001) ("Summary enforcement is appropriate 'where no substantial dispute exists regarding the entry into and the terms of an agreement.'").  As the Sixth Circuit Court of Appeals recently noted, "[a]greements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out.  As such, courts should uphold settlements whenever equitable and policy considerations allow." *Id.* (internal quotations and citations omitted.).

Further, Plaintiff has asserted, and Defendants have not disputed, that Defendants have failed to pay the required $20,000 down payment.  Under the terms of the parties' negotiated settlement agreement, such a failure requires the entry of a $500,000 consent judgment.  Thus, the court will enter a consent judgment, in substantially the same form as the judgment already circulated among the parties.[5]

---

[5] A slight modification is necessary to reflect the accurate procedural posture of this case and to conform with the court's internal formats.

## IV. CONCLUSION

IT IS ORDERED that Plaintiff's "Motion to Enforce Settlement Agreement" [Dkt. # 8] is GRANTED.

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated:  August 18, 2005


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 18, 2005, by electronic and/or ordinary mail.

        S/Lisa G. Teets
        Case Manager and Deputy Clerk
        (313) 234-5522